## 26725. MILLER v. WHITESBURG BANKING COMPANY.

DECIDED JUNE 18, 1938.

*Willis Smith,* for plaintiff in error. *Boykin & Boykin,* contra.

BROYLES, C. J. The exception here is to the direction of a verdict for Whitesburg Banking Company (hereinafter referred to as the bank), in a proceeding brought by it against O. S. Miller to foreclose a bill of sale as a mortgage. The note secured by the bill of sale was for the principal sum of $300, but there was entered on the bill of sale a payment of $200, and the affidavit of foreclosure recited that Miller was due the bank $100, besides interest and attorney's fees. The execution was levied on "one black mare-mule weighing about 1000 pounds about 4 years old," as the property of Miller, and Miller gave a forthcoming bond for the property. The note and bill of sale were dated September 1, 1936, under seal, and signed by O. S. Miller. The note recited that it was "for value received," and was an unconditional promise to pay to the order of the bank $300 on or before September 2, 1936. The following sufficiently shows the nature of the bill of sale: "Witnesseth, that whereas the party of the first part [Miller] has secured from the party of the second part [the bank] advances of money and (or) supplies for the purpose of planting, cultivating, making, and harvesting a crop hereinafter described, amounting to the sum set out: In order to further secure the payment of all indebtedness due by the party of the first part, and (or) any other indebtedness . . , the party of the first part bargains and sells to the party of the second part . . the following property located and being on the farm and occupied by the party of the first part, hereinabove described, to wit: one black mare-mule weighing about 1000 pounds, about four years old. Also one calico-colored horse, weighing about 1000 pounds, and about six years old." Miller's affidavit of illegality substantially averred that on August

31, 1936, he purchased from the bank its equity in "the Springer farm . . , also the growing crops located thereon, and all farming tools and stock, except one four-year-old mule and one calico-colored horse about five years old;" that he offered H. R. Watkins, the bank's representative, $2000 for the bank's entire interest in said property; that Watkins said he had to go to Carrollton to attend a board meeting and see what the bank would do; that he returned with a deed from the bank to Miller, showing a consideration of $2300; that "deponent agreed with . . Watkins, before the delivery of the deed and the payment of the purchase-money, that he would pay $2000 cash for all of said property, except the four-year mule and horse above referred to, and . . . Watkins agreed to said trade and delivered the deed, and your deponent paid him $2000 cash;" that all of said property, including said horse and mule, were included in the deed; that "after deponent and Watkins had consummated said trade," Watkins told him to give a bill of sale back to the bank for the horse and mule, "which he did, showing that the title was in Whitesburg Banking Company, and not in deponent;" that "deponent . . went into possession of said property immediately;" that at Watkins' request deponent pastured said horse and mule until fall, when Watkins "asked him . . to see if he could sell them for the said bank;" that about two months later deponent sold the mule for $200 and paid that amount to the bank; that a short time thereafter Watkins authorized deponent to trade said horse for a mule, which he did; that "later he traded the mule for another mule, receiving $75 profit;" that "he kept the latter mule something like a week or ten days, and the same died;" that sometime after deponent obtained possession of the Springer place and said personal property, "it became time to sign up for the Government rentals for . . 1936, and . . H. R. Watkins signed up for the said property, or a portion thereof, for Whitesburg Banking Company, and obtained from the Government a rental check for $59.52, which . . deponent was and is entitled to, it being the contract and agreement that the entire property, including the crop for the year 1936, and the equity held by the Whitesburg Banking Company in said property, should be turned over immediately, which was done;" that said $75 obtained by deponent in said mule trade belongs to the bank, but deponent retained it as the matter of

Government rentals had not been settled; and that "deponent . . is only indebted to the Whitesburg Banking Company in the sum of $15.48 [the difference between said rental check of $59.52 and said $75 procured in said mule trade], and he tenders said amount into court in full and complete settlement."

The bank introduced in evidence the note and bill of sale, and closed. Miller introduced a warranty deed from Whitesburg Banking Company to O. S. Miller, reciting a consideration of $2300, and conveying described land, "subject to an original loan of $5500 made to H. A. Jones by the Federal Land Bank of Columbia," together with "our undivided one-half interest in all crops now growing on the above land, except that title is retained to a sufficient amount of the crop to pay for the tenant's share of fertilizer and supplies furnished during the year 1936 on halves," and "all wagons, rakes, mowers, plows, and all other farm tools . . now located on said farm . . ," and "also 7 mules and one horse located on said farm. . . " This deed was duly recorded on September 11, 1936. When O. S. Miller took the witness-stand in his own behalf, he was asked this question: "What was the agreement between you?" Counsel for the bank interposed this objection: "The deed shows the agreement." The court said: "You are attempting to change the terms of the contract. The deed recites the consideration, a consideration of so much money for certain property. You are not going into the consideration; you are going into the property conveyed." Counsel for Miller said: "I want to show that he had a subsequent contract with Mr. Watkins before the deed was delivered, and before he paid the money, that he was not to pay the $2300, but was to pay $2000, and Mr. Watkins reserved one of the mules and a horse." The court said: "I don't think under the rules of law you can show anything, unless it was subsequent to the delivery of the deed. I think you are bound by the terms of the written instrument." Counsel for Miller then said: "I want to show that he was to give $2000 for all the property except the one mule and horse in question, and Mr. Watkins accepted that trade, and Mr. Miller paid the money, and Mr. Watkins turned over the deed. He [Watkins] said to him [Miller] : 'This deed shows that you own that horse and mule, but under our agreement you don't own them; so you execute a bill of sale showing that we own them,' and he executed it under those

conditions." The court said: "I think you can show that." Miller then testified substantially that he offered to pay $2000 for all the property described in the deed; that Watkins made a counter-offer, which the witness refused; that after further negotiations Watkins told him that $2300 was the best proposition that the bank would make; that finally the witness offered to give $2000 for all the property covered by the deed, except that the horse and mule described in the bill of sale were not to be included in the purchase; that Watkins accepted this proposition; that the deed showing a consideration of $2300 and including said horse and mule had been prepared the day before, and Watkins said, "You give me a bill of sale for the mare and mule, and the deed would be just as good as if it was rewritten:" that "after the trade was made and I signed the bill of sale, and the deed was delivered, Mr. Watkins, . . in taking the stock back, . . asked me if I would pasture the stock until the fall of the year, and I did;" that the agreement was that the witness was "to furnish the feed bill" and get all over $200 that he sold the mule for, and all over $100 that he sold the horse for; that he "sold the mule for $200 plus around $15, and immediately sent cashier's check for the money;" and that, under authority from Watkins, witness swapped the horse for a mule, which he traded for another mule and "$75 difference."

Miller further testified: "Well, they had held up my rentals for which I qualified, and I had a talk with Mr. Watkins. . . I had contracts on three other farms, and I couldn't get any of my papers. The whole amount was held [up] in connection with this until the matter was settled. Before I bought the place from Mr. Watkins, I asked Mr. Watkins if this property was qualified for Government rentals, and he told me it was not. . . He said he thought it could be done. . . We were 35 acres short, and we qualified, and did get the full amount of the rental for myself and for the tenants on the place. They got the full amount by my qualifying. On November 20, after I had been in possession of the property, and after this contract had been completed, and after the place complied with the Government regulations, Mr. Watkins signed that paper, and automatically that made them become interested from the Government standpoint in some amount, and Mr. Watkins agreed in his store that they had no equity, and he

88

did agree to take it up as well with the committee and have it released, and he agreed to do that twice, but he didn't have it done. This continued standing until along in the spring. I had $400 or $500 in Government checks . . , and I went to Mr. Watkins' office and insisted that something be done about it; but they didn't do it. . . Well, I held the $75 to see whether or not, or to whom, the money belonged." At this stage of the case counsel for the bank moved to "exclude all this testimony seeking to vary the terms of a written contract." The court said he thought that "it clearly violates the parol-evidence rule." Counsel for Miller said: "We will show that the mule was sold for $200, and the horse was traded for a mule, and the mule was later sold for $75 boot, and they got $59.50 of his money that we ought to have credit for." The court said: "You have got a remedy for that, if they have done that. That don't alter the fact that you can not vary the terms of this written instrument by verbal testimony. I sustain the motion." Then, on motion of counsel for the bank, the court "directed a verdict in favor of the plaintiff against the affidavit of illegality, and entered judgment accordingly." To this judgment Miller excepted for the following reasons: 1. That there was no evidence to support the verdict and judgment. 2. "That the evidence showed that the bill of sale and note, they being attached, was executed without consideration and under the agreement as an accommodation, to show that the title to the mule and horse was in the Whitesburg Banking Company, and not in O. S. Miller, the deed having been executed prior to the time the trade was consummated conveying the horse and mule together with other property to . . Miller. 3. That the Whitesburg Banking Company having offered to sell said property, as shown by the deed, including the horse and mule in question, for $2300, and having had a deed prepared reciting that consideration and conveying the horse and mule; that subsequent to the time the deed was prepared an agreement was made between the defendant . . and the agent of the Whitesburg Banking Company, by the terms of which $2000 was paid for the property, and the horse and mule reserved by the Whitesburg Banking Company, and the bill of sale and note was executed to show that the title was in the Whitesburg Banking Company as an accommodation and without consideration; and the parol testimony was admissible to show

these facts." The bill of exceptions further recites: "Under any view of the case . . O. S. Miller was entitled to a credit to the $59.50 for the rentals collected by the Whitesburg Banking Company, which the Whitesburg Banking Company admitted it was not entitled to and admitted it belonged to O. S. Miller."

"Although a promissory note recites a consideration, it is the right of the maker, when sued thereon by the payee, to prove by parol that there was really no consideration at all; and any facts pertinent to an issue thus arising are relevant." *Hawkins* v. *Collier,* 101 *Ga.* 145 (28 S. E. 632). In *Rheney* v. *Anderson,* 22 *Ga. App.* 417 (96 S. E. 217), this court held: "Where a negotiable promissory note purports to have been given 'for value received,' and suit is brought thereon by the payee, the maker may plead, and prove by parol, that the note was executed without consideration as between the parties, and for the sole purpose of enabling the payee to indorse it to a third person as collateral security for a debt which the payee desired to contract and which he promised to pay without assistance from the maker of the note. Such a note is a mere accommodation paper, and, while in the hands of the person to be accommodated, is without consideration and binds nobody." In his able concurring opinion in the *Rheney* case, supra, Judge Jenkins discussed at length the parol-evidence rule and its bearing upon the defense of a total absence of consideration. In *Ramsey-Fender Motor Co.* v. *Chapman,* 46 *Ga. App.* 385 (168 S. E. 92), there was under consideration a proceeding to foreclose a retention-of-title contract on an automobile. The holding there made, that in a suit between the original parties it was not erroneous to permit the defendant to show that the instrument was without consideration, was adhered to on the first motion for a rehearing, and a second motion for rehearing was denied. Subsequently an application for certiorari in the case was denied by the Supreme Court. The nature of the *Ramsey-Fender Motor Co.* case will be understood from the following quotation from the decision rendered on the first motion for rehearing: "The affidavit of illegality filed by the defendant in the foreclosure proceedings set up that he had originally bought a Ford car from plaintiff on July 10, 1929, giving his purchase-money note therefor in the sum of $480, payable in installments of $40 each; that on May 19, 1930, when the instrument now sought to be foreclosed

was given, he owed on said purchase-price only the sum of $80; that plaintiff came to defendant and asked him to allow them to retake his car and refinance it in order to allow them to borrow other money; and that as a matter purely of accommodation he gave a new instrument in the form of a purchase-money note in the sum of $360, which included the $80 actually owed and the remainder, purely as accommodation to the payees, for the purposes indicated. It appears from the record that at the time the new instrument was executed by defendant a new contract of purchase and sale of the original car was also executed, signed by each of the parties. All these facts appear from the record to have been proved without dispute; and also the further fact that the $80, which had remained unpaid under the original transaction, had been fully discharged prior to the date of the foreclosure; and that the instrument sought to be foreclosed, after having been traded to a third person, had been received back by the payees, prior to the foreclosure; and that the proceedings were instituted in the name of the payees themselves. . . The case of *Rheney* v. *Anderson,* 22 *Ga. App.* 417 (supra), presents almost an identical situation; and the reasoning and authorities cited in the concurring opinion in that case, which was delivered after full and mature deliberation, we think are controlling here. As we see the instant case, as between the parties to the instrument, there was an absolute want of consideration except as to the $80, which, according to the undisputed evidence, has been paid. It is true that the defendant can not be heard to *deny the promise to pay* the $360, but, as we see it, he can be heard to *attack* the promise to pay on the ground that it was a nudum pactum in so far as the $280 was concerned. It was said by the writer in his special concurrence in the case of *Rheney* v. *Anderson,* supra, that 'if the consideration is good, the promise must be enforced as expressed; while on the other hand, if the contract be without consideration, it matters not how absolute the admitted promise may be; as a nudum pactum it can not avail. The defense which is claimed in this case is not dependent upon an unauthorized attack upon the terms of an absolute and unambiguous promise; but the purport of the plea is that, while admitting the promise, it is nevertheless void, since, as between the parties, it is without the support of any valid consideration.'"

In denying the second motion for rehearing, the matter was gone into still more fully. There this court said: "As previously stated, the questions here involved were thoroughly gone into in *Rheney* v. *Anderson*, 22 *Ga. App.* 417 (supra). It is needless to repeat at length the discussion there made, but it will be seen that the conclusion there arrived at was, that, while the validity of an unconditional promise in writing may be attacked on the ground that it is not supported by a valid consideration, such an inquiry into the consideration can not be used as a pretext to alter or in any way vary the terms or conditions of the contract itself. . . In the instant case the stated consideration is not exempt from attack, if it can be shown that what is expressed as a valuable consideration is in fact but a mere fiction, and that the instrument is in fact without consideration. This is what was held in *Hawkins* v. *Collier*, 101 *Ga.* 145 (supra). This is true for the reason that showing that the contract was without consideration does not *change* the contract, but simply *voids* the contract. . . It is true enough that the note and contemporaneous agreement *say* that they were given for the purchase-price of the car, but as between the parties themselves mere words are not strong enough, nor can they be made strong enough, to support a nudum pactum. A good consideration, a meritorious consideration, and a valuable consideration are the rocks upon which all contracts rest. Words are but the medium of expression. They can set forth a consideration, but they can not supply it. They give form, but do not furnish substance. In the absence of some real and actual consideration, not even a veritable artillery of words can lay down such a barrage as will prevent one who has received nothing, and who therefore owes nothing, from passing through."

In *Citizens Bank of Blakely* v. *Hall*, 48 *Ga. App.* 127 (172 S. E. 70), this court said: "Where a defendant in a suit on a promissory note, brought by the original payee, pleads want of consideration, and there is evidence that he received nothing as a result of executing the note, and that no consideration existed at the time of its execution (the note having been executed as an accommodation note for a few days, until it could be ascertained if the debt was really due by the defendant, and it being ascertained thereafter that the debt was not due by the defendant), such evidence, when accepted by the jury as true, is sufficient to sustain the plea

92

of want of consideration." The foregoing decision was affirmed by the Supreme Court on certiorari (179 *Ga.* 662, 179 S. E. 496), where it was ruled as follows: "1. It is a good defense to an action on a negotiable promissory note, whether under seal or not, in the hands of the original payee, that it was executed without any lawful consideration. 2. A seal on a promissory note raises a prima facie presumption that it is founded upon a consideration; but this presumption is rebuttable, and the sufficiency of the rebuttal evidence is generally a question for the jury."

Under the foregoing authorities, the defendant had the right to plead, and prove if he could, as a valid defense to the foreclosure proceedings, that the note and bill of sale were executed without consideration and for the sole purpose of accommodating the plaintiff by putting the title to the mule and horse back in it where it belonged. And while the affidavit of illegality did not plead in so many words that the instruments were executed without "consideration," it clearly appears from the alleged facts set forth in the affidavit that the defense to the foreclosure proceedings was based on that theory. The plea was sufficiently supported by the evidence to carry the case to a jury. It was also a question for the jury to determine whether Watkins received from the Government any "rentals" which rightly belonged to the defendant; and, if so, whether he received them as the agent of the plaintiff. It follows that the court erred in directing the verdict against the affidavit of illegality.

*Judgment reversed. MacIntyre and Guerry, JJ., concur.*